Mr. Fisher, are you ready to proceed? Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court and Counsel, I'm Mark Fisher with the Appellate Defender's Office, and I'm representing the defendant in this case, Robert Moylan. Mr. Moylan was convicted in a jury trial of seven counts of forgery. Evidence of trial shows that Mr. Moylan, a licensed clinical professional counselor, agreed to provide counseling to two individuals who'd been convicted of DUI in DuPage County and whose part of their sentences were obligated to receive a certain number of DUI counseling hours. The jury found that Mr. Moylan did provide counseling to these individuals, but he did not provide the requisite number of counseling hours, and that he authored documents stating that he did provide the requisite number of counseling hours. The judge imposed six concurrent sentences and one consecutive sentence, aggregating to a total of eight years imprisonment. This is a direct appeal from the convictions and sentences. Seven issues are raised on appeal. In the first two issues, for alternative reasons, Mr. Moylan asks Your Honors to vacate the judge's order denying the motion to suppress evidence that was seized from his professional offices pursuant to search warrants, and he asks for a reversal and a reband for additional proceedings. Issue three seeks a reversal and a reband because a different circuit court judge improperly authorized eavesdropping of some of Mr. Moylan's counseling sessions. Issue four seeks a reversal and a remand because the client involved in those counseling sessions testified about various statements made by Mr. Moylan that were completely irrelevant to any of the charged offenses, but which prejudiced him because they tended to portray him as an unprofessional and an unlikable individual. In issue five, he asked this court to remand this cause for a new post-trial motion hearing and a new sentencing hearing because he was denied counsel during those proceedings. In issue six, he asked the court to vacate three of the convictions and remand for resentencing based on the one act, one crime principles. Finally, in issue seven, he asks Your Honors to reduce his excessive sentences or remand for a new sentencing hearing. Now, all of these issues are important. All of them deserve this court's careful attention and consideration, but of course our time today is limited, and so I intend to confine my arguments to the first two issues concerning the search warrants. Of course, if Your Honors have questions about the other issues, I'd be happy to address those as well. Now, as argued in issue one, and as we all well know, the Fourth Amendment allows a police search of private property as long as there is probable cause to believe that evidence of criminal conduct will be found in the place to be searched, and the particularity requirement of the Fourth Amendment requires that the warrant and the search be narrowly tailored to the investigation. In Maryland v. Garrison, the United States Supreme Court said that the particularity requirement ensures the search will be carefully tailored to its justifications and will not take on the character of the wide ranging exploratory searches that the Fourth Amendment was intended to prohibit. For example, the general warrants used by the Kingsmen during colonial times. In this case, the warrants that were issued for Mr. Moylan's professional offices violated these Fourth Amendment protections. Now, I think in order to more fully understand the argument, it's important to consider how the investigation began and what the state had to prove. The investigation began when the ex-girlfriend of one of Mr. Moylan's clients complained to an investigator in the state's attorney's office that her ex-boyfriend was convicted of DUI as part of the sentence was required to complete a certain number of DUI counseling hours, and she drove him back and forth to Mr. Moylan's office for that purpose. She also told the investigator she herself had at one time been convicted of DUI, had to receive counseling hours, so she had some idea about the process. She suspected based on the amount of time he was spending with Mr. Moylan that he was not actually receiving the requisite number of hours. So, an investigation began. A grand jury subpoena was issued, and subsequently, the search warrant was issued. And so, what the state basically had to prove in this case, a couple of things. Primarily, it was a mathematical equation. How many hours did each individual counsel with Mr. Moylan? So, for example, hypothetically, assume an individual has to receive 40 hours, and that's the agreement. If they have 10 sessions with the counselor, each one lasting four hours, that's 40. But if those 10 sessions each last only three hours, that's 30 hours. That's less than 40. And so, it's a question of math, number one. Number two, did Mr. Moylan execute documents stating that these individuals completed the requisite number of hours? In other words, did he falsely or did he misrepresent the number of hours his patients received? So, looking at the warrants, the warrants in this case were not narrowly tailored to that investigation or to searching out that type of proof. Instead, the warrants were vastly overbroad and violated the particularity requirement because they allowed the police to seize practically everything found in Moylan's offices. For example, it allowed the police to confiscate driver's licenses, keys, academic degrees, utility bills, phone books, documents that would have had nothing to do with the charge defenses and could not have aided the police in proving of these charges. The warrants also allowed the police to search computers and cell phones in Mr. Moylan's offices. Those types of things could potentially contain some relevant evidence. The problem is, as has been recognized by other courts, computers and cell phones, they contain so much information that they are also likely to contain information having nothing to do with the suspected criminality. In fact, one author has likened this situation to a search for a needle in a haystack. You might find the needle, but you're also likely to find a lot of hay that has nothing to do with anything. And finally, the warrants allow the police to search patient files. Patient files might have contained some of this information, but they're also likely to contain a lot of confidential exchanges between the client and the counselor, which again would be private and would have nothing to do with the charge offenses. And therefore, courts have recognized that seizure of patient files can be fraught with danger. I would ask your honors to confirm and contrast the warrants issued in this case with the grand jury subpoena that's also contained in the record. Again, that was issued previously just as the ex-boyfriend of the ex-girlfriend who I discussed previously. That grand jury subpoena specifically directed or allowed investigators to request documents evidencing the number of hours that the particular patient spent in counseling with Mr. Moylan. In addition to billing records and any documents, Mr. Moylan might have authored stating how many hours of counseling the individual received. That grand jury subpoena was very narrowly written, narrowly drafted, and I would submit to this court that the warrants should have been drafted just as narrowly, albeit with respect to additional patients. So for all of these reasons, the defendant submits that Mr. Moylan's Fourth Amendment rights were violated as a result of the issuance of these warrants and the seizure of the property, and he asked for a reversal and remand on that ground. In addition, as argued in Issue 2, he asked for a reversal and remand due to various state and federal statutes ensuring the privacy interests of counseling patients. Now the state, as you mentioned at the beginning of Issue 2, I mentioned the physician-patient privilege. State on Appeal correctly points out Mr. Moylan's not a licensed physician, he's not a surgeon, not a doctor, and so that privilege does not apply. But the reason I cited that privilege is that that was really the first privilege recognized by courts in this country, which then gave rise to the recognition of similar privileges, including the counselor-patient privilege. And I cite 225 ILCS 107-75, which established in Illinois a privilege for patients of licensed professional counselors and licensed clinical professional counselors. Moylan testified at pretrial hearings he's a psychotherapist and a licensed clinical professional counselor, two prosecution witnesses at trial acknowledged that fact. State presented no evidence to the contrary. Now the state on appeal correctly points out that these privileges were designed to protect the patient or the client, not the counselor. They were intended to imbue individuals with the confidence that they could share very private matters with their counselors and not have those matters disseminated to the public or even disseminated to judges or to the police. But as argued in Issue 2, there is authority for the proposition that the counselor can invoke the privilege on behalf of his clients. In addition, and more importantly, these various privilege statutes discussed in Issue 2, with very rare exceptions, only allow the police to seize private patient files if they first obtain permission from the patients or clients themselves. And in this case, there was no evidence that that took place. So for this additional reason, or alternative reason, the warrants were deficient and the evidence should have been suppressed. Now during the suppression hearing, the judge made an interesting statement. She was not the judge who signed this particular warrant, but she heard the motion to suppress. And she said that when she is presented with a warrant for review, she simply looks at the four corners of the warrant. Is it overbroad? Does it allow a fishing expedition? She believed this warrant did not violate those principles. The defendant disagrees. But in addition to that, she asked, as a state trial court judge, does she have to consider, does any state court judge have to consider federal statute, some of which relied on Issue 2? And her belief was that the answer is no. Well, as argued in Issue 2, some of the state privileges incorporate the federal protections. And so yes, this is a, it's a different animal where we're dealing with patient privileges, with patient files. And so for those reasons, the warrants were deficient. The last thing I want to stress to the court is that Mr. Boylan is not arguing that he's above the law. He's not arguing because he's a counselor that he can violate criminal laws with punity. He's not arguing that he should somehow be insulated or immune from criminal prosecution, investigation where that is warranted. He's merely arguing like any other citizen. He's protected by the Fourth Amendment. And in this case, those patient files were protected by the privacy interests. And for these alternative reasons or additional reasons, he respectfully asked this court to vacate the order denying the motion to suppress, reverse, and remand with directions that these, this evidence not be used against him in particular, that those patient files not be used in other criminal proceedings. And unless you have questions, that concludes my remarks. No. Thank you. Thank you. Good afternoon. May it please the court, counsel. My name is Stephen Biagi. I'm Assistant State's Attorney in DuPage County, Illinois, and I represent the people of the state of Illinois. Addressing claim one, the warrants were particularized. They focused on court-ordered clients, meaning DUI probationers who were being sent to Mr. Boylan, and documentation such as sentencing orders, correspondences between the defendant and court monitoring programs, and specifically, on some level, documents containing the name David Molenkamp. And maybe I should also go back to how this kind of came about. As counsel stated, the original grand jury subpoena related to Molenkamp and whether he had even completed his court-ordered treatment. And the results of that grand jury subpoena showed not only that he hadn't, but that obviously Mr. Molenkamp had committed forgery by putting in writing that he did. So that was one of the reasons why there was another request, this being the search warrant. And Molenkamp was the original, I guess you'd say, target of the investigation. Then when they realized that Molenkamp wasn't doing what he was supposed to be doing, he became a target too. So that's why there was a broader request for court-ordered documents and things of that nature. And the seizure of things like rental agreements and phone books and things like that, that helps to show that Molen was employed in this capacity as a counselor, whether he was doing it or not. And... Ms. Chiagi, excuse me. The subpoena that was issued, or the warrant that was issued, did it, in fact, result in people that were not named as DUI defendants being taken from the office? Documents with regard to other individuals other than those that were named specifically as DUI defendants? Non-DUI... I don't know. I haven't seen the results of the search warrant. But I mean, the search warrant did want court-ordered clients, so to speak. Right. My question is, did they get anything else other than court-ordered clients? That I don't know. Sorry. I'm sorry. I don't know that. But on some level, ultimately, this is a bit of kind of what you do about nothing. Because ultimately, nothing that was obtained from the search warrant was used to charge him or try him. He was charged, and I'll break it down, he was charged with 23 counts in this indictment, counts one through four referred to forgery relating to client Murkey's. I believe that's how his name is pronounced. He was the one who was a voluntary over here, who went after the search warrant to get the court-ordered treatment, and he testified at trial as to the lack of within that search warrant. Counts five through seven related to Mollenkamp, and he was the one who was the subject of the grand jury subpoena. So the grand jury subpoena response was what was used to prosecute Moylan relating to the Mollenkamp charges, if that makes sense. And then counts eight through 19, which he was found not guilty of, I'll point that out, related to Murkey's. And again, he was the over here defendant, or I'm sorry, over here witness. Counts 20 through 21 related to someone named Donahue, and he was a voluntary witness. He just approached us and said, hey, I'll testify, this is what Moylan did or didn't do. And he was not part of nothing from within the search warrant related to him. And then count 23 related to all three of them. I'm sorry, to Murkey's, and count 22 related to all three of them. So it's my understanding that the grand jury subpoena is not being contested. And. So you didn't use the evidence. We didn't use anything from within the search warrant. And I'm not saying the court should feel free to just reverse the trial court in denying the motion to suppress. But on some level, there's a no harm, no foul, or at least a much ado about nothing relating to this. Even if the search warrant had been suppressed by the trial judge, that the evidence would have been the same. And he would have been found guilty of the six counts that, you know, he was found guilty of and presumably not guilty of the others. Relating, though, to claim two. And this, that analysis also applies to claim two. On some level, our position has always been that Mr. Moylan was trying to use the statutory provisions and as a shield, as a shield, rather than merely as a as a shield, shield and a sword. I'm sorry. He, he, he filed many plaintiffs, many plaintiffs, many plaintiffs, many plaintiffs, pleadings relating to some of these things. But they were not, how do I phrase this? I'm sorry, I don't, trying to find a diplomatic way of phrasing it. They were mostly, it seems like, prepared by him, even if he had an attorney file it. So they weren't as honed as they probably could have been. And it was difficult to really understand what he was really claiming. Counsel, did an attorney authenticate those documents, those pleadings you're referencing? It's just your belief they were filed by the defendant? It's my belief, yes. An attorney did file them. But in my 25 plus years as an attorney, I didn't really, I haven't really seen that many doc, pleadings of that nature filed by an attorney. And I'm not saying that he said, he typed it out and then the attorney put his name to it. But I, I kind of get the impression that his, that the attorneys were accepting his arguments because he was presumably paying them. And they were filing for him, whether they believed in it or not. And that kind of came back to haunt them because he fired several of his attorneys, or at least made claims that they were violating his rights and therefore they had to be replaced. At least three attorneys, as I recall, filed motions to withdraw because he wasn't cooperating with their, with them and their advice. He, he had a very strained relationship with his attorneys as well as What relevance does this have, Counsel, to the issues on appeal? I understand. I apologize, Your Honor. But going back to the, to the analysis, I think our brief addresses a lot of this, especially the claim that he was subject to the Substance Abuse Disorder Act and Court of Federal Regulations. The judge found, and it's found, it's based on case law, that in that instance there is no claim that he can make if he's not federally funded. And he wasn't. He was simply a private guy who was, who was doing his DUI treatment and therefore that doesn't apply to him whatsoever. HIPAA doesn't apply to him whatsoever. And even if there were a violation, that would be limited to financial damages under federal law. But HIPAA does not create a privilege for patients' medical information. It merely provides procedures to follow for transferring that information to a covered entity. And it's pretty, it's clear that law enforcement agencies, including the State Attorney's Office, are not covered entities under HIPAA. These search warrants, again, were not a, not a phishing expedition. They were narrowly tailored and ultimately they were not, the information from that, that search warrant was not used at trial. It's just that simple. So on some level, we believe that this should, there is a, it was not used at trial and therefore on some level this issue is not really helpful for him. If the court has any further questions, I'll certainly answer them. But I believe that's as much as I can really explain to the court. Nothing further. Defense did not bring it up. This sentence, they've argued in the brief that it's an excessive sentence. It was on the maximum end of the range. He has one prior conviction for a domestic battery, which occurred quite some time before these allegations. That is correct. He, the court made some pretty detailed findings there. Not many as it related to mitigation, though. Well, no. In fact, she essentially found that although the defendant didn't argue mitigation, Schnivel has found that there was no mitigation that would really affect the sentence, so to speak. But the court made some pretty specific findings that he did not provide or fulfill his professional obligation to the court because on some level he was, I wouldn't say a court employee, but he was employed to help enforce court orders. And therefore he performed a fraud upon the court and upon his clients. He put his clients at risk. He put the people of the county of DuPage at risk. He received compensation for these services. And I'm not just saying... Isn't that an issue the defense also raises, that he was not guilty for the the charges of the financial related charge? Yeah, the Blue Cross Blue Shield fraud? Correct. Yes, but the court found that he, in one of the recordings, you can hear him tendering money. And the things stated between Mr. Moylan and Mr. Murkies show that he was receiving cash from in addition to whatever he might have been billing. But as she put it, he audibly took cash on a recording. She also found that he was not complying with his obligation as a licensed provider. He was obligated to prevent this particular offense and to bring anyone else who might be committing it to justice and forgive him. He refused to do exactly what he was hired to do. And she noted that the recording showed there was precious little, perhaps even nothing, on the recording that goes to treatment itself. And she found this sentence was necessary to deter others from committing the same crime. And ultimately, we'll point out that the most important factor is the nature of the offense, and that if the court finds that that is important, the court need not give greater weight to mitigation, if there is any even, in fashioning a sentence. Does the court have any further questions on this issue? No. Thank you. For these reasons, we would ask that the courts affirm the trial court's judgment, and I thank you. Thank you, Mr. Piazza. Mr. Fisher, reply. Thank you, Your Honor. And in particular to the argument that there was, that none of this evidence was used. Yeah. So first of all, there were three patients or clients of Mr. Moylan's that were referenced among various charges, of one of whom was a man named Donahue, who counsel mentioned, and who testifies as a prosecution witness. Interestingly, Donahue said he received the records a number of hours. His testimony went to alleged billing fraud. But counsel today says that Mr. Donahue came to the state. That might be true. I don't know. There's no specific reference to that. I don't believe in the record, although the record is voluminous. It was my thought or impression that the state only found out about Mr. Donahue through the search of Mr. Moylan's offices. And so Mr. Donahue was involved in two of the charges. Mr. Moylan was acquitted of those. But certainly as you pile on more and more charges, I submit to the court that that does prejudice the person on trial, the defendant. In addition, I submit to the court that because of the importance both of the Fourth Amendment protections and the privacy statutes, and given the language that we find from the U.S. Supreme Court, from federal courts, state courts, dealing with these two different types of issues and the very serious language about the import of those Fourth Amendment protections and the importance of the privacy protections, that if we say, okay, they shouldn't have done it, but that didn't come in a trial, so they get a pass this time, I think that's very problematic. And so I think where the warrants were clearly overbroad and where they violated these patient protections because they seized the files without seeking patient permission, that it's important for this court and its decision to make it very clear that this cannot be tolerated. If the evidence was excluded, could the state have still proceeded and convicted your client on the charges he was convicted of? Yeah, so it's hard to predict how things might have been different. Yeah, I mean, again, with the exception of Mr. Donahue, because it seems that they didn't know prior to the search, maybe they did, again, I don't know, counsels, the information that he shared with the court. Beyond that, I would agree with the court, it appears that this other information was not brought into trial. I would mention that the inventory returns show that 25 boxes containing patient files were seized. An investigator for the state's attorney's office who testified at trial said that he himself was in possession of 950 patient files. And presumably, the state found absolutely nothing there. In any event, at the very least, I think it's important for this court to say that those patient files, if Mr. Moylan would be retried or any proceedings against Mr. Moylan or whoever, that those patient files cannot be used and should be returned. With respect to Awol Kepa, there were two prosecution witnesses who said, yes, Kepa does apply to what Mr. Moylan does, which I think contradicts the argument made by the state today, contradicted the finding made by the judge. This is an unusual, I think this is an unusual type of case to come up in the circuit court, in the state circuit court. I mentioned before, the judges questioned, does a state court judge have to consider federal law in deciding whether to issue a warrant? I don't necessarily fault her for asking this question. This is an unusual circumstance. And so I think it's important here for this court to educate judges and prosecutors and the police, especially where patient files are involved. There are additional hoops that the state has to go through. And I think it's important for this court to make that clear in its decision. Finally, with respect to the sentence, I will just say that, again, referencing all these various patient files that were seized from Mr. Moylan's offices and the fact that the charges in this case only allege the two individuals did not receive the requisite number of hours. And if that's true, two is too many. There's no question. But the fact that he's consulted with all these other people currently without any problems, without any missteps, I think that tends to show that the eight years in this case was excessive. I thank your honors for your time and consideration. Thank you. Unless your honors have questions. No questions. I have one. The 950 files in the possession of the state, were those all related to individuals with criminal charges coming out of DuPage County? That is a good question and it's not clear from the record. Interestingly, the warrant allowed police, did direct police to search files or allow police to seize files pertaining to individuals who had gone through the court process. But specifically mentioned in DuPage County and in other court systems in the state. So it's unclear. Thank you. Thank you, Mr. Fisher. Thank you, Your Honor. Thank you, sir. Gentlemen, the court will take the case under advisement and issue an opinion in due course.